IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Case No. 22-cv-01050-PAB-SBP

ANTHEA KING, on behalf of The Estate of Sidney King, Sr., Decedent,

Plaintiff,

v.

HOME DEPOT U.S.A., INC.,

Defendant.

_____

## ORDER

_____

This matter is before the Court on Defendant Home Depot U.S.A., Inc.'s Motion for Summary Judgment [Docket No. 58].  Plaintiff Anthea King filed a response,[1] Docket No. 62, and defendant Home Depot U.S.A., Inc. ("Home Depot") filed a reply.  Docket No. 64.  The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I.  BACKGROUND

### A.  Procedural History

On April 7, 2022, Ms. King filed this action on behalf of her deceased husband, Sidney King, against defendant Home Depot in the District Court of Denver County, Colorado.  Docket No. 4.  On April 29, 2022, Home Depot removed the case to federal court.  Docket No. 1.  Ms. King filed an amended complaint on August 29, 2022.  Docket No. 19.  In her amended complaint, Ms. King alleges that her husband rented a Hilti

_____

[1] The Court struck Ms. King's first response, Docket No. 59, for failure to comply with the Local Rules, which require all documents to be double spaced.  Docket No. 60 (citing D.C.COLO.LCivR 10.1(e)).

PRO Gas Concrete Saw 14" ("the saw") from a Home Depot store in Denver, Colorado and that, after operating the saw for two hours, Mr. King died from cardiovascular disease complicated by the toxic effects of carbon monoxide. *Id.* at 2–3, ¶¶ 8, 14, 21. Ms. King brings claims for negligence and wrongful death against Home Depot. *Id.* at 4–7, ¶¶ 35–54.

On April 6, 2023, Ms. King filed a motion for sanctions against Home Depot, alleging that Home Depot failed to preserve the saw in question by selling it before Ms. King could inspect it. Docket 39 at 4. Ms. King asked that, as a sanction, the jury be given an adverse inference instruction based on the spoliation of the saw. *Id.* at 14. On July 14, 2023, Magistrate Judge Susan Prose denied without prejudice Ms. King's motion for sanctions. Docket No. 56. Judge Prose determined that it was more appropriate to resolve the questions posed by Ms. King's motion "on a fuller record that includes both expert and fact depositions." *Id.* at 10.

On December 13, 2023, Home Depot filed a motion to strike the testimony of Ms. King's forensic engineering expert, Mark Cannon, as well as two affidavits from Mr. Cannon which Ms. King attached in her response to the motion for summary judgment. Docket No. 71; Docket No. 62-2; Docket No. 62-3. On December 29, 2023, Ms. King filed a renewed motion for sanctions against Home Depot for failure to preserve the saw. Docket No. 75. After reviewing the briefing for the motion for summary judgment, Home Depot's motion to strike Mr. Cannon's testimony, and Ms. King's renewed motion for sanctions, for the reasons discussed in this order, the Court finds that it is not necessary to resolve these motions before ruling on the motion for summary judgment.

**B.  Undisputed Facts[2]**

Mr. King rented a gasoline-powered concrete saw from Home Depot Store

#1532, located at 3870 Quebec Street in Denver, entering into the rental contract at

9:53 a.m. on May 6, 2020.[3]  Docket No. 58 at 1, ¶ 1.  David Pettit, who was then

---

[2] The following facts are undisputed unless otherwise indicated.

[3] In her response, Ms. King provides a single response to Home Depot's asserted undisputed facts in paragraphs 1, 6, 7, 8, 9, 11, 12, and 13: "***Denied.***  Plaintiff cannot truthfully admit to this fact because she does not have personal knowledge of this matter.  Despite reasonable inquiry into the facts and known documents, the first rental contract initially provided by Defendant on May 4, 2022, was ***not*** signed.  Plaintiff did not receive a rental contract with a 'marking' inside the signature box until Defendant filed their Motion to Dismiss on May 16, 2022."  Docket No. 62 at 1.  For support, Ms. King cites "Exhibit A - Affidavit of Collins - Attach. 1&2."  *Id.*  The Court assumes that Ms. King is citing two versions of the rental agreement Ms. King includes in her first exhibit, a composite exhibit consisting of six different documents.  *See* Docket No. 62-1 at 4–14.  If a party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion" and may "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2)–(3); Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.ix.  First, Ms. King does not make a specific citation to the record to support her denial of Home Depot's asserted undisputed facts.  Ms. King's reliance on an exhibit containing six documents requires the Court to speculate as to what documents "1&2" are and is a violation of both the Local Rules and the Court's practice standards.  *See* D.C.COLO.LCivR 5.1(a); *see* Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.ii.  Moreover, Ms. King's general reference to the documents, which the Court assumes to be two different versions of the rental agreement, does not explain how these documents support her denials.  The Court's practice standards state that "[g]eneral references to pleadings, depositions, or documents, are insufficient if the document is over one page in length."  See *id.*, § III.F.3.b.ii.  The asserted undisputed facts in paragraph 1 are that Mr. King rented a gasoline-powered concrete saw from Home Depot and entered into a rental contract on May 6, 2020.  Docket No. 58 at 1, ¶ 1.  Paragraphs 6, 7, 8, and 9 assert facts regarding the formation of the contract between Mr. King and Home Depot.  *Id.* at 3, ¶¶ 6–9.  Specifically, these asserted undisputed facts describe the process Mr. King took to enter into the rental agreement, such as providing his electronic signature, as well as what information Home Depot provided to Mr. King on a pin-pad screen and what information was provided to him through a printed version of the rental agreement.  *Id.*  The asserted undisputed facts in paragraphs 11, 12, and 13 quote particular provisions of the rental agreement.  *Id.* at 4–6, ¶¶ 11–13.  Ms. King's denials of these facts appear to dispute whether Mr. King entered into the rental agreement.  However, Ms. King's denials are insufficient to raise a dispute of material fact as to this issue.  She states that she "cannot truthfully admit to

employed as a Rental Service Technician at Home Depot Store #1532, assisted Mr.

King with the tool rental.  *Id.* at 2, ¶ 2.  Mr. King, acting without assistance, selected the

Hilti PRO Gas Concrete Saw 14", Part No. 0109511087, out of the open stock of tools

on display in the rental department of Home Depot Store #1532 and approached Mr.

Pettit at the tool rental counter.  *Id.*, ¶ 4.  After he provided his driver's license as

identification, Mr. King reviewed a statement that was presented electronically on a pin-

pad which stated, in part:

> I agree that no representative of The Home Depot is authorized to make any promise, warranty or representation to me other than those reflected in writing in the Agreement.  I agree to the Terms & Conditions and understand that the Agreement cannot be modified or changed except in writing signed by both parties.  With respect to equipment I am renting, I have received the equipment referenced in the Agreement.[4]

---

this fact because she does not have personal knowledge of this matter."  Docket No. 62 at 1.  It is immaterial whether Ms. King has personal knowledge of how Mr. King entered into the rental agreement.  *See Brigance v. Vail Summit Resorts, Inc.*, No. 15-cv-1394-WJM-NYW, 2017 WL 131797, at *3 n.1 (D. Colo. Jan. 13, 2017) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) ("Although Plaintiff's factual recitals state that she is 'without information or knowledge to admit or deny' VSRI's practice . . . , a mere lack of personal knowledge is insufficient to demonstrate a genuine dispute at the summary judgment phase where Plaintiff has identified no contradictory evidence or factual inference."), *aff'd*, 883 F.3d 1243 (10th Cir. 2018).  Rather, to avoid summary judgment, Ms. King must raise a genuine dispute of material fact.  *See* Fed. R. Civ. P. 56(c)(1)–(2).  Moreover, Ms. King's assertion that Home Depot did not produce a signed copy of the rental agreement until it filed a motion to dismiss does not raise a dispute of material fact as to whether Mr. King signed the agreement or whether the rental agreement produced by Home Depot would be admissible at trial.  Finally, both Home Depot and Ms. King rely on the provisions in the contract that Home Depot quotes in paragraphs 11, 12, and 13.  *See* Docket No. 58 at 8–17; Docket No. 62 at 8.  Ms. King appears to have no basis to dispute that these paragraphs accurately reflect the provisions of the rental agreement.  As such, the Court deems each of these facts admitted.

[4] Ms. King denies this fact.  Docket No. 62 at 2, ¶ 5.  She states that (1) she "cannot truthfully admit to this fact because she does not have personal knowledge of this matter," (2) that Mr. Pettit's deposition "indicated that there is a possibility of multiple prompts that will be present on the screen," and (3) that Mr. Pettit "did not physically see the screen that was in front of the decedent."  *Id.*  Ms. King's denial does not refute that

*Id.*, ¶ 5.  Mr. King could not leave the screen displaying this information and advance to the next step of forming the rental contract until he clicked a pin pad button marked "Next."  *Id.* at 3, ¶ 6.  Mr. King selected "Next" and used the pin pad to sign the rental agreement.  *Id.*, ¶ 7.  After Mr. King signed the contract, Mr. Pettit printed a complete copy of the rental agreement, Contract #: 332728, and the Operation and Safety Guide for the Hilti PRO Gas Concrete Saw 14" Mr. King rented.  *Id.*, ¶ 8.  The Equipment Rental Agreement Terms and Conditions portion of the rental agreement includes the following exculpatory provision:

> **5.  <u>LIMITATION OF LIABILITY.</u>**
>
> **I. For Tool and Large Equipment Rentals Only.**  DURING THE RENTAL PERIOD, RENTER ASSUMES ALL RISKS ASSOCIATED WITH AND FULL RESPONSIBILITY FOR THE POSSESSION, CUSTODY AND OPERATION OF THE TOOLS AND LARGE EQUIPMENT, INCLUDING, BUT NOT LIMITED TO RENTAL CHARGES, RENTER TRANSPORT, LOADING AND UNLOADING, PROPERTY DAMAGES AND DESTRUCTION, LOSSES, PERSONAL INJURY, AND DEATH.

*Id.* at 4, ¶ 11.  The agreement also contains the following exculpatory provision:

> **7.  <u>INDEMNIFICATION.</u>**
>
> **(a)** EXCEPT AS OTHERWISE PROVIDED FOR IN THIS AGREEMENT, TO THE FULLEST EXTENT PERMITTED BY LAW, RENTER HEREBY INDEMNIFIES, RELEASES, AND HOLDS THE HOME DEPOT HARMLESS FROM AND AGAINST ALL CLAIMS LOSSES, EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES AND EXPENSES), LIABILITIES AND DAMAGES (INCLUDING PERSONAL INJURY, DEATH, PROPERTY DAMAGE, LOST PROFITS, AND SPECIAL, INCIDENTAL AND CONSEQUENTIAL DAMAGES) ARISING OUT OF: (**I**) ALL CLAIMS WHICH ARE EXCLUDED FROM OR IN EXCESS OF THE LIABILITY PROTECTION PROVIDED BY THE HOME DEPOT; (**II**) ALL CLAIMS BY OR AGAINST THE HOME DEPOT ARISING OUT OF RENTER'S OPERATION OF THE EQUIPMENT; AND (**III**) ALL CLAIMS BY OR AGAINST THE HOME DEPOT ARISING OUT OF

---

Mr. King was presented with this prompt.  The Court, therefore, deems this fact admitted.

RENTER'S FAILURE TO COMPLY WITH ALL TERMS OF THIS AGREEMENT. RENTER'S INDEMNITY OBLIGATION WILL SURVIVE THE EXPIRATION OR TERMINATION OF THIS AGREEMENT.

*Id.* at 4–5, ¶ 12.  Finally, the rental agreement includes the following provisions:

3. **PERMITTED USE/RESTRICTIONS/MAINTENANCE.**  Renter agrees that Home Depot has no control over the manner in which the Equipment is operated during the Rental Period. Renter warrants that:
    (a) Renter will inspect the Equipment to confirm that it is in good condition, without defects and is suitable for Renter's intended use;

     . . . .

    (d) Renter will use the Equipment for its customary purpose, in compliance with all operating and safety instructions and immediately discontinue use of the Equipment if it becomes unsafe or in a state of disrepair.

*Id.* at 5–6, ¶ 13.

Mr. King and Mr. Pettit went outside the building.  *Id.* at 6, ¶ 15.  Mr. Pettit started the saw and confirmed that it was in good working condition and running properly while Mr. King watched.[5]  *Id.*  Based on the operational test he performed on the subject gas-powered concrete saw on the morning of May 6, 2020 and before releasing the unit to Mr. King, Mr. Pettit determined that the saw was functioning properly and was suitable for use by Mr. King in conditions appropriate for the operation of a gas-powered concrete saw.[6]  *Id.* at 7, ¶ 19.  Home Depot did not load the concrete saw to its full

---

[5] Ms. King denies this fact.  Docket No. 62 at 2, ¶ 15.  She claims she "does not have personal knowledge of this matter" and that "there are no images of decedent outside or watching David Pettit operating the machine."  *Id.*  For the reasons discussed earlier, a denial based on Ms. King's lack of personal knowledge is insufficient.  Home Depot's factual assertion is supported by Mr. Pettit's sworn testimony. Docket No. 58 at 6, ¶ 15; Docket No. 58-2 at 6, ¶ 20; Docket No. 58-4 at 55–56, 96:21–97:4.  Ms. King fails to show a disputed issue of material fact.  As such, the Court deems this fact admitted.

[6] Ms. King denies this fact.  Docket No. 62 at 3, ¶ 19.  Citing Mr. Pettit's deposition testimony, Ms. King states that "the evaluation was conducted only by sight, sound and smell" and that "water was sprayed on the concrete saw prior to its

capabilities during the testing of the saw.  Docket No. 62 at 3, ¶ 3.  The concrete saw was towards the end of its shelf life. [7]  *Id.*, ¶ 4.

Rental tools are evaluated by a tool rental service technician or tool rental associate after a customer completes a rental to ensure that the tool remains in good condition.  Docket No. 58 at 7, ¶ 17.  An "Out for Repair" service tag and work order will be placed on the machine if any repairs, adjustments, or maintenance actions are needed to restore the tool to proper operation.[8]  The Hilti PRO Gas Concrete Saw 14" Mr. King selected did not have an "Out for Repair" service tag and work order on the machine, indicating it was determined to be in proper operating condition by a Tool Rental Service Technician or Tool Rental Associate following its return by the previous rental customer.[9]  *Id.*, ¶ 18.

---

operation."  *Id.*  Ms. King does not explain why Mr. Pettit's evaluation was insufficient to conclude that the saw was in "good working condition" and does not raise a disputed issue of fact regarding Mr. Pettit's belief that the saw was functioning properly and was suitable for use by Mr. King.  As such, the Court deems this fact admitted.

[7] In a section of her response called Statement of Additional Disputed Fact, Ms. King asserts that the saw "was at the end of its life span," Docket No. 62 at 3, ¶ 4, citing Mr. Pettit's deposition testimony, in which he states "I know [the saw] was toward its end of the shelf life, if my memory serves me right.  I think it was put in in 2017 or 2018." Docket No. 62-6 at 39, 168:17–169:7.  Home Depot does not admit or deny this fact. Docket No. 64 at 3, ¶ 4.  Instead, Home Depot states that "Mr. Pettit did not know the in-service dates for the subject saw, and it was rented out without incident at least twelve times after May 6, 2020."  *Id.*  These statements do not refute the fact asserted.  The Court deems admitted that the saw was towards the end of its shelf life, as Mr. Pettit testified.

[8] Ms. King denies this fact.  Docket No. 62 at 2, ¶ 17.  She states that "the rental prior to the decedent['s] cont[r]act was 'void' and a void cont[r]act may be the result of machine malfunction."  *Id.*  Ms. King provides no support for the fact that a "void" notation on what appears to be a record of rental agreements for the saw may be the result of machine malfunction.  She also does not refute that it is standard practice for Home Depot to tag a tool requiring repair as "Out for Repair."  The Court therefore deems this fact admitted.

[9] Ms. King denies this fact.  Docket No. 62 at 3, ¶ 18.  Ms. King again relies on the fact that the contract before Mr. King's contract was marked "void" and states that

Mr. King had experience with gas-powered concrete saws similar to the unit at issue, as Mr. King had previously rented gas-powered concrete saws from Home Depot locations on September 20, 2013, July 7, 2015, and April 19, 2016. *Id.*, ¶ 20.

Home Depot does not presently have possession of the saw. Docket No. 62 at 3, ¶ 1. After Mr. King's rental, Home Depot rented the saw an additional thirteen times, before selling the saw on September 10, 2020. *Id.* at 4–5, ¶¶ 14–27.

## II.   LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to the proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of

---

"the identifying tag was taken off in the back room" where it could not be inspected. *Id.* As discussed above, the Court finds that the "void" identifier for the previous contract does not support Ms. King's denial. She also does not refute or raise an issue of disputed fact regarding Mr. Pettit's testimony that there was no "Out for Repair" tag or other repair order associated with the saw when Mr. King rented it. *See* Docket No. 58-4 at 28–29, 57:11–58:20. The Court deems this fact admitted.

evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted).  "To defeat a motion for summary judgment, the nonmovant's evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise," and "[u]nsubstantiated allegations carry no probative weight." *SEC v. GenAudio Inc.*, 32 F.4th 902, 921 (10th Cir. 2022) (citations and alterations omitted).  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Bausman*, 252 F.3d at 1115.

## III. ANALYSIS

Home Depot asserts that Ms. King's claims for negligence and wrongful death are barred by the terms of the rental agreement that Mr. King signed.[10]  Docket No. 58

---

[10] Home Depot's motion is better understood as a motion for partial summary judgment on Home Depot's affirmative defense that Ms. King's claims are barred by the exculpatory provisions of the rental agreement, Docket No. 35 at 9, ¶ 10, rather than a motion for summary judgment on Ms. King's tort claims.  "To defeat a motion for summary judgment, a plaintiff, upon the defendant raising and supporting an affirmative defense, need only identify a disputed material fact relative *to the affirmative defense*." *Hamric v. Wilderness Expeditions, Inc.*, 6 F.4th 1108, 1122 (10th Cir. 2021).  "Only if the defendant also challenges an element of the plaintiff's claim does the plaintiff bear the burden of coming forward with some evidence in support of that element." *Id.*  For the reasons discussed below, the Court finds that Ms. King has failed to identify a dispute of material fact as to Home Depot's affirmative defense.

at 1.  Under Colorado law,[11] parties may enter contracts that limit the ability of future representatives to bring wrongful death claims.  *See Allen v. Pacheco*, 71 P.3d 375, 379 (Colo. 2003) (holding that an arbitration agreement binds a non–party spouse asserting a wrongful death claim).  "Exculpatory agreements purporting to shield a party from liability for its own simple negligence are disfavored," but "they are not necessarily void." *Redden v. Clear Creek Skiing Corp.*, 490 P.3d 1063, 1067 (Colo. App. 2020) (citations omitted).  "In determining whether an exculpatory agreement is valid, there are four factors which a court must consider: (1) the existence of a duty to the public; (2) the nature of the service performed; (3) whether the contract was fairly entered into; and (4) whether the intention of the parties is expressed in clear and unambiguous language." *Jones v. Dressel*, 623 P.2d 370, 376 (Colo. 1981).

Home Depot claims that each of the *Jones* factors weighs in favor of concluding that the exculpatory provisions of the rental agreement are enforceable.  *See* Docket No. 58 at 10–17.  In her response, Ms. King contends that the fourth factor weighs against the enforceability of these provisions and raises arguments unrelated to the application of the *Jones* factors.  *See* Docket No. 62 at 7–20.

### A.  First, Second, and Third *Jones* Factors

The Court finds that the first three factors of the *Jones* test weigh in favor of enforcing the exculpatory provisions of the rental agreement.  "[F]or an exculpatory agreement to fail under the first factor, the party seeking exculpation must be engaged

---

[11] Although the agreement has a choice of law provision, the parties assume that Colorado law applies.  *See, e.g.*, Docket No. 58 at 9; Docket No. 62 at 7.  Accordingly, the Court will apply Colorado law.  *Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption.").

in providing a service of great importance to the public, which is often a matter of practical necessity to some members of the public." *Bauer v. Aspen Highlands Skiing Corp.*, 788 F. Supp. 472, 474 (D. Colo. 1992) (citing *Jones*, 623 P.2d at 376–77). Businesses that provide water, electricity, or sanitary services are examples of providers of important public services. *See Espinoza v. Ark. Valley Adventures, LLC*, 809 F.3d 1150, 1153 (10th Cir. 2016). Providers of rental tools do not provide important public services. For example, in *1745 Wazee LLC v. Castle Builders Inc.*, 89 P.3d 422, 424 (Colo. App. 2003), *as modified on denial of reh'g* (Dec. 18, 2003), the plaintiff entered into a contract with Castle for the "construction of a building." The court found that "the nature of the service performed by Castle," which was "providing a building service in a large commercial loft project," "while important, was not an essential service to members of the public." *Id.* at 426. Here, the Court finds that Home Depot's tool rental service, like the construction of a building, is not an essential public service.

"Under the second *Jones* factor, [courts] examine 'the nature of the service performed.'" *Brigance v. Vail Summit Resorts, Inc.*, 883 F.3d 1243, 1252 (10th Cir. 2018) (quoting *Jones*, 623 P.2d at 376). "Analysis of this factor is linked to and in many respects overlaps the analysis conducted under the first *Jones* factor, as it calls for an examination of whether the service provided is an 'essential service' or a 'matter of practical necessity.'" *Id.* (citations omitted). Unlike the rentals for housing, rentals for tools and equipment have not been found to raise issues of practical necessity under the second *Jones* factor. *Compare Stanley v. Creighton Co.*, 911 P.2d 705, 708 (Colo. App. 1996) ("it is undisputed that a landlord's services are generally held out to the public and that housing rental is a matter of practical necessity to the public"), *with*

*Mincin v. Vail Holdings, Inc.*, 308 F.3d 1105, 1110 (10th Cir. 2002) (upholding an exculpatory provision for a mountain bike rental); *Bauer v. Aspen Highlands Skiing Corp.*, 788 F. Supp. 472, 474 (D. Colo. 1992) (upholding exculpatory provision for ski equipment rental); *Salazar v. On the Trail Rentals, Inc.*, No. 11-cv-00320-CMA-KMT, 2012 WL 934240, at *1 (D. Colo. Mar. 20, 2012), *aff'd sub nom*, 506 F. App'x 709 (10th Cir. 2012) (unpublished) (upholding exculpatory provision for snowmobile rental). This is because renters have many options, including renting the equipment elsewhere or hiring a service provider who has access to the tool. *See Horne v. Elec. Eel Mfg. Co., Inc.*, 987 F.3d 704, 724 (7th Cir. 2021) (applying Illinois law) ("He does not suggest, for example, that he had no other options, that he could not hire a plumber, or rent a machine elsewhere under better terms."). Here, the Court finds that the nature of Home Depot's tool rental service does not create a "disparity of bargaining power" based on the practical necessity of Home Depot's services and that the second *Jones* factor weighs in favor of upholding the exculpatory provisions. *Mincin*, 308 F.3d at 1111.

Turning to the third factor, "[a] contract is fairly entered into if one party is not so obviously disadvantaged with respect to bargaining power that the resulting contract essentially places him at the mercy of the other party's negligence." *Brigance*, 883 F.3d at 1253 (citation omitted). "When engaging in this analysis, [courts] examine the nature of the service involved, the circumstances surrounding the formation of the contract, and whether the services provided are available from a source other than the party with which the plaintiff contracted." *Id.* (citation omitted). First, as the Court has noted, tool rental is not an essential service and, therefore, does not present a circumstance where one party is at an obvious disadvantage with respect to bargaining power. *Mincin*, 308

F.3d at 1111 (because mountain biking is not a "practical necessity" or an "essential activity," the participant "did not enter into the contract from an inferior bargaining position" and the contract was not unfair).  Moreover, Ms. King presents no argument that the contract was not fairly entered into, and there are no undisputed facts to suggest that Mr. King was at a disadvantage or could not have rented the saw elsewhere.[12]  *Stone v. Life Time Fitness, Inc.*, 411 P.3d 225, 229 (Colo. App. 2016) *modified* (Jan. 12, 2017) ("Nothing in the record indicates that Stone could not have taken her business elsewhere and joined a different fitness club or recreation center. Nor is there any other evidence that the parties' relative bargaining strengths were unfairly disparate so as to weigh against enforcing the Agreement."); *Redden*, 490 P.3d at 1069 (rejecting plaintiff's argument that the agreement was not fairly entered into because "Redden proffered no evidence that her boots were 'held hostage' or that she ever attempted to reverse the boot/adjustment transaction"); *Hamric*, 6 F.4th at 1122 (plaintiff must identify a disputed material fact as to defendant's affirmative defense to defeat summary judgment).  Accordingly, the first three *Jones* factors weigh in favor of finding that the exculpatory provisions of the rental agreement are enforceable.

---

[12] Even if Ms. King's purported denials of the undisputed facts regarding the formation of the rental agreement could imply that Mr. King did not read the agreement, a party cannot avoid a finding that the contract was fairly entered by asserting that he did not read the contract.  *See B & B Livery,* 960 P.2d at 138 n.5 ("in the absence of fraud, one who signs a contract without reading it is barred from claiming she is not bound by what she has signed"); *Lahey v. Covington,* 964 F. Supp. 1440, 1445 n.1 (D. Colo. 1996) ("Even though plaintiff did not read the agreement before signing it, she is nevertheless bound by its terms since there is no evidence that she was fraudulently induced to sign it.").

**B.  Fourth *Jones* Factor**

The fourth *Jones* factor requires the Court to consider "whether the intention of the parties is expressed in clear and unambiguous language."  *Jones*, 623 P.2d at 376. The Tenth Circuit has identified five factors courts should consider in determining whether the parties' intent is expressed in unambiguous language: "(1) whether the agreement is written in simple and clear terms that are free from legal jargon; (2) whether the agreement is inordinately long or complicated; (3) whether the release specifically addresses the risk that caused the plaintiff's injury; (4) whether the contract contains any emphasis to highlight the importance of the information it contains; and (5) whether the plaintiff was experienced in the activity making risk of that particular injury reasonably foreseeable."  *Hamric*, 6 F.4th at 1128–29 (citation and quotations omitted). "Each and every factor, however, need not be satisfied for a court to uphold the validity of a liability release."  *Id.* at 1129.

Home Depot identifies two provisions of the rental agreement that it asserts unambiguously bar Ms. King's claims.  Docket No. 58 at 14.  The section of the rental agreement titled "Limitation of Liability" states:

> I. **For Tool and Large Equipment Rentals Only**.  DURING THE RENTAL PERIOD, RENTER ASSUMES ALL RISKS ASSOCIATED WITH AND FULL RESPONSIBILITY FOR THE POSSESSION, CUSTODY AND OPERATION OF THE TOOLS AND LARGE EQUIPMENT, INCLUDING, BUT NOT LIMITED TO RENTAL CHARGES, RENTER TRANSPORT, LOADING AND UNLOADING, PROPERTY DAMAGES AND DESTRUCTION, LOSSES, PERSONAL INJURY, AND DEATH.

Docket No. 58 at 4, ¶ 11.  Home Depot maintains that the phrase "'all risks' associated with the activity, which here is 'operation of the tools,' is unambiguous."  Docket No. 64 at 7.

In the section titled "Indemnification," the rental agreement states:

EXCEPT AS OTHERWISE PROVIDED FOR IN THIS AGREEMENT, TO THE FULLEST EXTENT PERMITTED BY LAW, RENTER HEREBY INDEMNIFIES, RELEASES, AND HOLDS THE HOME DEPOT HARMLESS FROM AND AGAINST ALL CLAIMS LOSSES, EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES AND EXPENSES), LIABILITIES AND DAMAGES (INCLUDING PERSONAL INJURY, DEATH, PROPERTY DAMAGE, LOST PROFITS, AND SPECIAL, INCIDENTAL AND CONSEQUENTIAL DAMAGES) ARISING OUT OF: . . . (**II**) ALL CLAIMS BY OR AGAINST THE HOME DEPOT ARISING OUT OF RENTER'S OPERATION OF THE EQUIPMENT.

Docket No. 58 at 4–5, ¶ 12.

As to this provision, Home Depot asserts that, in upholding similar provisions, the Tenth Circuit has stated, "we are not persuaded that phrases such as . . . 'HOLD HARMLESS AND RELEASE,' and 'ANY AND ALL liability and/or claims' are so technical and 'abstract' that a layperson could not be expected to understand the purpose or meaning of the agreement." *Id.* at 14 (quoting *Patterson v. PowderMonarch, LLC*, 926 F.3d 633, 642 (10th Cir. 2019)).

First, the Court finds that the agreement is not inordinately long or complicated. The rental agreement spans five pages. Docket No. 58-1 at 2–6. Other than special notices that do not apply to agreements executed in Colorado, the agreement is less than four pages. *Id.* at 3–5. Nor is the agreement inordinately complicated. It has well-labeled sections and subsections that pertain to discrete issues and has minimal cross-references in and among these sections. *Id.* at 2–6. Moreover, the subject of the agreement, a tool rental, is not a complex transaction, as reflected in the contract. *Id.*

The provisions relied on by Home Depot are emphasized to highlight the importance of the information they contain. The titles of both provisions are capitalized, bolded, and underlined. Furthermore, the text of these provisions is capitalized. *Brooks*

*v. Timberline Tours, Inc.*, 127 F.3d 1273, 1275 (10th Cir. 1997) ("the capitalization of the third paragraph of the release highlights the importance of the information it contains").

It is undisputed that Mr. King had experience with gas-powered concrete saws and had previously rented gas-powered concrete saws from Home Depot on three prior occasions.  Docket No. 58 at 7, ¶ 20.  The Court finds that it is unnecessary to resolve the issue of whether such experience made the risk of injury from the fumes of the saw's operation reasonably foreseeable to Mr. King considering the other *Hamric* factors.  *See Hamric*, 6 F.4th at 1129 ("Each and every factor, however, need not be satisfied for a court to uphold the validity of a liability release.").

The release does not mention a gas-powered concrete saw, but instead refers to the object of the contract as either a "tool" or as "equipment."  *See* Docket No. 58-1 at 2–6.  The agreement also does not mention the hazards of operating gas-powered equipment or the dangerous fumes they emit.  *Id.*  The agreement does not specifically address the risk that caused Mr. King's injury.  *See id*.  This *Hamric* factor weighs against a finding that the intention of the parties is expressed in clear and unambiguous language.  *Jones*, 623 P.2d at 376.  Thus, two *Hamric* factors weigh in favor of a finding that the release satisfies *Jones* factor four, whereas one factor weighs against such a finding and another factor is ambiguous.

Turning to the final *Hamric* factor, the Court will consider whether the provisions are written in simple and clear terms that are free from legal jargon such that they unambiguously express the intent of the parties to release Home Depot from liability in this case.  The "Limitation of Liability" provision states:

> DURING THE RENTAL PERIOD, RENTER ASSUMES ALL RISKS
> ASSOCIATED WITH AND FULL RESPONSIBILITY FOR THE POSSESSION,

CUSTODY AND OPERATION OF THE TOOLS AND LARGE EQUIPMENT, INCLUDING, BUT NOT LIMITED TO RENTAL CHARGES, RENTER TRANSPORT, LOADING AND UNLOADING, PROPERTY DAMAGES AND DESTRUCTION, LOSSES, PERSONAL INJURY, AND DEATH.

Docket No. 58 at 4, ¶ 11.  Although the undisputed facts which are part of the summary judgment briefing do not include facts regarding the circumstances of Mr. King's death, the complaint alleges that his death resulted from: (1) Mr. King "operat[ing] the saw for a total of two hours," (2) Home Depot "negligently and carelessly maintain[ing] the saw so as to cause it to malfunction and emit fumes that were inhaled by the decedent," and (3) "the excessive fumes[ ] resulted in" Mr. King's death.  Docket No. 19 at 2, 4, ¶¶ 14, 35–36.  Based on these allegations, Ms. King's claims are based on injuries that arose "DURING THE RENTAL PERIOD."  Docket No. 58 at 4, ¶ 11.

Turning to the phrase "RENTER ASSUMES ALL RISKS," *id.*, courts have found that the phrase "assumes all risks" to be plain, broad, and indicative of the parties' intent to assume risks.  For example, in *Redden*, 490 P.3d at 1071, the court found that the plaintiff's "signed waiver unambiguously encompasses 'ALL' risks – including [defendant's] negligence – associated with her use of ski lifts."  The court noted that "'[a]ll' is an unambiguous term and means the whole of, the whole number or sum of, or every member or individual component of, and is synonymous with 'every' and 'each.'" *Id.* (quoting *Hudgeons v. Tenneco Oil Co.*, 796 P.2d 21, 23 (Colo. App. 1990)).  Similarly, in *Patterson*, the court was "not persuaded" that the phrase "'ANY AND ALL liability and/or claims' [is] so technical and 'abstract' that a reasonable layperson could not be expected to understand the purpose or meaning of the agreement."  *Patterson*, 926 F.3d at 642.  Moreover, the court rejected "Plaintiffs' contention that the exculpatory agreement was unclear or ambiguous because it did not specifically detail that it would

release claims arising out of Defendant's employee's allegedly negligent operation of the ski lift." *Id.* at 643. Instead, the court found that the broad language "unambiguously applies" to plaintiff's claims arising from injuries she sustained from an employee's negligence. *Id.* (citing *Brigance v. Vail Summit Resorts, Inc.*, 883 F.3d 1243, 1257 (10th Cir. 2018)); *see also Johnson v. Gold's Gym Rockies, LLC*, No. 18-CV-0047-WJM-KMT, 2019 WL 1112374, at *5 (D. Colo. Mar. 11, 2019) (finding exculpatory provisions clearly reflect the parties' intent to extinguish liability for plaintiff's claims because, (1) although "Plaintiff alleges that Defendant failed to put an 'Out of Order' sign on the broken rowing machine," she "expressly waived 'ANY AND ALL CLAIMS OR ACTIONS' against Defendant for '<u>INJURIES ARISING FROM GOLD'S GYM'S NEGLIGENCE, WHETHER DIRECT OR INDIRECT</u>,'" and (2), although "Plaintiff alleges that she sustained injuries from the use of Defendant's exercise equipment," she explicitly waived "'ANY AND ALL CLAIMS OR ACTIONS' against Defendant for injuries 'RESULTING FROM EXERCISING AT ANY GOLD'S GYM'").

Ms. King argues that, whatever the limitation of liability provision means, "it clearly cannot be applied to a situation in which defendant is alleged to have breached its duty to exercise ordinary care to prevent negligent maintenance." Docket No. 62 at 8. As such, she argues that "all risks" do not include those risks arising from Home Depot's negligent maintenance of the concrete saw. Ms. King cites no authority for this proposition and provides no argument as to why negligent tool maintenance is different from other forms of negligence. While "[e]xculpatory agreements purporting to shield a party from liability for its own simple negligence are disfavored," they are permitted under Colorado law, so long as the provisions of the contract are clear. *Redden*, 490

P.3d at 1067; *B & B Livery, Inc. v. Riehl*, 960 P.2d 134, 136 (Colo. 1998) (exculpatory provisions "stand at the crossroads of two competing principles: freedom of contract and responsibility for damages caused by one's own negligent acts.") (citation omitted). Courts have found that the phrase "all risks" includes the risk that an injury might result from the negligence of an employee.  *See*, *e.g.*, *Patterson*, 926 F.3d at 642; *Espinoza*, 809 F.3d at 1157; *B & B Livery,* 960 P.2d at 135.  Because the phrase "all risks" refers to each and every risk associated with operating the tool, the limitation of liability provision incorporates the risks associated with operating a tool that had been negligently maintained by a Home Depot employee.

The Court finds the phrase "ASSOCIATED WITH . . .THE POSSESSION, CUSTODY AND OPERATION OF THE TOOLS" is unambiguous and applies to Mr. King's conduct in this case.  Ms. King's claims are based on the fumes that were emitted by the concrete saw and "inhaled by the decedent" while he "operated the saw for a total of two hours."  Docket No. 19 at 2, 4, ¶¶ 14, 35.  Because Ms. King asserts that the injuries occurred while Mr. King was "operating" the saw, the exculpatory provision covers Mr. King's conduct in this case.  *Id.*  Two events are associated if they are "related, connected, or combined together."  *Associated*, Mirriam-Webster, https://www.merriam-webster.com/dictionary/associated (last visited August 29, 2024). Ms. King alleges that the fumes were emitted while Mr. King was operating the saw.  As such, the health risks to Mr. King from inhaling fumes are directly related and connected to his operation of the saw.

Finally, the Court notes that the provision lists the risks Mr. King agreed to assume, which include "PERSONAL INJURY, AND DEATH."  Docket No. 58 at 4, ¶ 11.

Thus, the exculpatory provision not only covers "all risks" associated with the operation of the concrete saw, but also expressly includes such risks that could lead to death. This includes risks posed by poisonous fumes known to be emitted by gasoline-powered tools during their operation. Considering each part of the limitation of liability provision individually and collectively, the Court finds that it unambiguously expresses the intent of the parties to release Home Depot from liability in this case. Moreover, the provision is written in simple and clear terms that are readily understandable through the ordinary meaning of the words used. Nor does the limitation of liability provision use confusing legal jargon.

Next, Ms. King relies on a provision of the rental agreement requiring Home Depot to provide a saw "in good working condition." Docket No. 62 at 8. The provision states:

> The Home Depot will provide Renter the tools, vehicles or large equipment (collectively "**Equipment**") described on **Page 1** and in accordance with the terms set forth in this Agreement. The Home Depot will provide the Equipment "as is" and in good working condition during the rental period (the "**Rental Period**"). [13]

Docket No. 58-1 at 2.

Ms. King appears to be making two distinct arguments. First, she seems to argue that, given Home Depot's agreement to provide a saw in good working condition, the exculpatory provisions should be interpreted to mean that "all risks" and "all

---

[13] Neither party includes this provision in their statement of undisputed facts. *See* Docket Nos. 58, 62. However, both parties attach copies of the rental agreement with identical provisions. *Compare* Docket No. 58-1, *with* Docket No. 62-1. Each of these contracts contain the provision regarding "good working condition." Docket No. 58-1 at 2, ¶ 1; 62-1 at 4, ¶ 1. Home Depot does not contest that the provision is included in the contract. Docket No. 64 at 4–8. As such, the Court finds that it is undisputed that the rental agreement includes this provision.

liabilities" do not include the risks and liabilities that arise from the operation of a machine that is not in good condition.  Docket No. 62 at 8–9.  Second, Ms. King seems to argue that, regardless of the scope of the exculpatory provision, Home Depot cannot invoke its protections because it materially breached the contract by failing to provide a saw in good working condition.  *Id.* at 9–10.

Ms. King relies on the opinion of the Seventh Circuit in *Horne*, 987 F.3d at 719–20, for both arguments.  Docket No. 62 at 10–13.  In *Horne*, the Seventh Circuit addressed identical contract provisions in Home Depot's tool rental agreement.  *See Horne*, 987 F.3d at 713 ("Home Depot sought summary judgment on all of Horne's claims on the basis of exculpatory clauses in the rental contract.").  The court applied Illinois law.  *Id.* at 719.

In *Horne*, the plaintiff "contended that Home Depot could not assume a specific duty (to provide a device in good working condition) in one part of a contract, and then also exculpate itself from liability for breach of that core promise in another part of the contract (the Exculpatory Clause)."  *Id.* at 720.  The court analyzed the "in good working condition" provision as it related to the scope of the exculpatory provisions.  *Id.* at 722–23.  First, the court addressed the apparent contradiction in Home Depot's rental agreement that Home Depot will provide the equipment "as is" but also that the equipment will be "in good working condition."  *Id.* at 719–20; Docket No. 58-1 at 2.  The court held that, "[i]n resolving the ambiguity of these provisions against the drafter, and in construing this language in the context of the entire agreement, we conclude that the initial express promise to provide the drain rodder in 'good working condition' takes precedence over the limiting phrases 'as is' and 'with all faults.'  Home Depot thus may

not disclaim liability for injuries that occur as a result of a breach of that express promise." *Horne*, 987 F.3d at 719–20 (citation omitted).  The court stated that "[o]ur reading harmonizing the conflicting provisions of the rental agreement . . . resolves . . . Horne's opposition to Home Depot's motion for summary judgment, namely, that the injury he sustained was not within those contemplated by the Exculpatory Clause." *Id.* at 722.  *Horne* reasoned that "[c]ourts closely scrutinize liability release clauses because they are disfavored under Illinois law, and they are strictly construed against the party seeking to rely on them.  The parties need not contemplate the precise occurrence that later results in injury, but the defendant must put the plaintiff on notice of the range of dangers for which the plaintiff assumes the risk of injury." *Id.* (citations omitted).  The court held that, "[u]nder the contract, Horne assumed the risks of operating a machine in good working condition.  But because of the 'good working condition' clause, he did not assume the risks of operating a machine with flaws in its basic functioning." *Id.*  The court cautioned that "[t]his is not to say that exculpatory clauses in general or the specific one at issue here are toothless.  Horne must prove at trial that the machine was not in good working condition and that the alleged flaws in the machine were the cause of his injuries." *Id.* at 723.

Home Depot responds that the Colorado Supreme Court rejected a similar argument in *Chadwick v. Colt Ross Outfitters, Inc.*, 100 P.3d 465, 469 (Colo. 2004).  Docket No. 64 at 5.  In *Chadwick*, the parties contracted for Colt Ross Outfitters to take Mr. Chadwick on an elk hunt.  *Chadwick*, 100 P.3d at 466.  During the trip, Mr. Chadwick complained that his horse was ill.  *Id.*  The horse wrangler removed the saddle from Mr. Chadwick's horse and placed it on a pack mule.  *Id.*  Mr. Chadwick was

instructed to ride the mule for the rest of the trip.  *Id.*  Later that day, the horse saddle slipped from the mule, throwing Mr. Chadwick down a hill and causing him serious injuries.  *Id.*

The outfitter agreement stated that "the sponsor agrees to provide the participant with a hunt, including a horse for each client, and that the participant agrees to assume the risk of 'any activity associated with the type of trip agreed to.'"  *Id.* at 468.  Moreover, Mr. Chadwick agreed to "RELEASE FROM ANY LEGAL LIABILITY . . . the Outfitter . . . for any injury or death caused by or resulting from [his] participation in the activities described."  *Id.*  The described activities included the "use of animals."  *Id.*  The court found that the contract cannot "reasonably be understood – as Chadwick intended, according to his deposition – to make the release provisions effective only upon satisfactory fulfillment by the Outfitter of its contractual obligations."  *Id.* at 469.  The court rejected Mr. Chadwick's contention that "the agreement was inapplicable to injuries caused while Chadwick was riding a mule, rather than a horse."  *Id.* at 466.  "Nothing in the contract suggests that the release agreement is in any way contingent."  *Id.* at 469.  "The applicability of the release agreement is therefore limited to the question whether Chadwick was injured while participating in the activities described in the contract."  *Id.*  The court reasoned that "[w]hether or not a failure to properly supervise or to provide Chadwick a riding horse on the day in question could amount to a breach by the Outfitter under these circumstances, neither eventuality could alter the fact that Chadwick was injured while participating in the guided hunt that was the subject of the contract, or activities associated with it."  *Id.*  The court concluded that "Chadwick's express assumption of the risk of 'any activity associated with the type of

trip agreed to' can hardly be understood to be inapplicable for the reason that he was hunting on a mule at the time of his injuries." *Id.* The court held that the "unambiguously broad" exculpatory provisions of the contract were enforceable. *Id.* at 468–70. Home Depot claims that, "[r]ather than dwell on the contract's bilateral requirements, the Colorado Supreme Court focused on the phrasing of its exculpatory provisions to determine if those terms were unambiguous pursuant to the fourth *Jones* factor." Docket No. 64 at 5. The Court agrees.

The Court finds that it is unnecessary to resolve the apparent ambiguity in the rental agreement that Home Depot agreed to provide Mr. King a saw "as is" and "in good working condition." Resolution of such ambiguity would not alter the fact that Mr. King was injured while operating the concrete saw. *Chadwick*, 100 P.3d at 469. The exculpatory provision states that Mr. King "ASSUMES ALL RISKS ASSOCIATED WITH AND FULL RESPONSIBILITY FOR THE . . . OPERATION OF THE TOOL[ ] . . . INCLUDING . . . DEATH." Docket No. 58 at 4, ¶ 11. The language of the provision "cannot reasonably be understood" to be effective only if Home Depot satisfies its contractual obligations. *Chadwick*, 100 P.3d at 469. As such, the exculpatory provision expresses in clear and unambiguous language the parties' intent to limit Home Depot's liability in this case. *Jones*, 623 P.2d at 376. Considering the *Jones* factors, the Court finds that the limitation of liability provision is enforceable and is an affirmative defense to Ms. King's negligence and wrongful death claims. Because the Court finds that the limitation of liability provision is enforceable, the Court will not consider whether the indemnification provision is also an enforceable exculpatory provision.

## C. **Duty of Good Faith and Willful and Wanton Conduct**

Ms. King argues that Home Depot breached the rental agreement by selling the saw after the incident.  Docket No. 62 at 15.  She claims that Home Depot's duty of good faith and fair dealing "requires that neither party will do anything that will destroy or injure the right of the other party to receive the benefits of the contract."  *Id.*  She asserts that, "[i]n this case, Home [D]epot had the duty to preserve the saw as evidence to allow for inspection" and that "Home Depot breached the Contract by failing to investigate the claim brought by the decedent's Estate."  *Id.*  This duty is not part of Home Depot's contractual obligations.  Ms. King relies on a provision of the contract which states, "All Renters will promptly complete incident reports, deliver to The Home Depot a copy of all related documents, and fully cooperate with The Home Depot's investigation of any vandalism, theft, accident, claim or lawsuit involving the Equipment."[14]  Docket No. 58-1 at 3, ¶ V; Docket No. 62 at 15.  The provision on which Ms. King relies imposes a duty on the renter to cooperate with Home Depot's investigation but imposes no reciprocal obligation on Home Depot.  Docket No. 58-1 at 3, ¶ V.  Therefore, Home Depot did not breach the contract by later selling the saw.  Instead, if Home Depot had a duty to preserve the saw, such a duty arises from Home Depot's common law obligation to refrain from spoliating evidence for litigation.  *McGee v. Pacheco*, No. 20-cv-00328-CMA-STV, 2021 WL 2104831, at *4 (D. Colo. May 25, 2021) ("As part of their common law discovery obligations, 'putative litigants have a duty to preserve documents that may be relevant to pending or imminent litigation.'" (quoting *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 620 (D. Colo. 2007)).  Whether Home Depot

---

[14] For the reasons discussed above, the Court finds that it is undisputed that the contract contains this provision.

complied with its common law obligation has no bearing on the enforceability of the exculpatory provision in the rental agreement.

Finally, Ms. King argues that the exculpatory provisions of the contract are inapplicable to her claims because Home Depot engaged in willful and wanton conduct. Docket No. 62 at 17 ("a limitation on liability is not enforceable if it is unconscionable or contrary to public policy, or if there has been a willful and wanton breach of the contract" (quoting *Best Beach Getaways LLC v. TSYS Merch. Sols., LLC*, No. 20-cv-01962-NRN, 2021 WL 3206300, at *9 (D. Colo. July 29, 2021)). Ms. King maintains that Home Depot engaged in wanton conduct by renting the saw to other customers after receiving notice of Mr. King's death, thereby putting the safety of future customers at risk. *Id.* Ms. King's claims in this case are not based on customers other than Mr. King, and therefore Home Depot's conduct after the saw was returned has no bearing on the enforceability of the rental agreement's exculpatory provisions.

Given that the exculpatory provision of Mr. King's rental agreement is valid, and that Ms. King has not demonstrated that the contract is otherwise unenforceable, the exculpatory provision of Mr. King's rental agreement bars Ms. King's claims for negligence and wrongful death. Home Depot is therefore entitled to summary judgment.[15]

---

[15] As discussed above, the Court finds that it is not necessary to rule on the parties' other motions before ruling on the motion for summary judgment. As part of her response to Home Depot's motion for summary judgment, Ms. King relies on affidavits from her expert witness, Mr. Cannon. *See* Docket Nos. 62-2, 62-3. Home Depot has filed a motion seeking to preclude Ms. King from relying on these affidavits to establish undisputed facts. *See* Docket No. 71. However, the factual allegations which Ms. King supports through Mr. Cannon's affidavits are not in her statement of additional disputed or undisputed facts. *See* Docket No. 62 at 3–5. Therefore, the Court has not considered these facts and they cannot serve as a basis for the Court denying Home

IV.     **CONCLUSION**

For the foregoing reasons, it is

**ORDERED** that Defendant Home Depot U.S.A., Inc.'s Motion for Summary

Judgment [Docket No. 58] is **GRANTED**.  It is further

**ORDERED** that Defendant Home Depot U.S.A., Inc.'s Motion to Strike Plaintiff's

Expert Designation and Expert Affidavits, and to Exclude the Testimony of Plaintiff's

Expert Mark Cannon [Docket No. 71] is **DENIED as moot**.  It is further

**ORDERED** that Plaintiff's Renewed Motion for Sanctions for Spoliation of Evidence

[Docket No. 75] is **DENIED as moot**.  It is further

**ORDERED** that Defendant Home Depot U.S.A. Inc.'s Motion for Leave to File

Second Motion for Summary Judgment and to Exceed the Total Page Limit of Practice

Standard III(F)(3)(a) [Docket No. 92] is **DENIED as moot**.  It is further

---

Depot's summary judgment motion.  *See* Fed. R. Civ. P. 56(e)(2)–(3); Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.ix.  Ms. King's motion for sanctions asks that the jury be given an instruction whereby the jury may infer from Home Depot's sale of the saw that the saw emitted increased levels of carbon monoxide.  *See* Docket No. 75.  However, even if the Court were to assume that the saw emitted excessive amounts of carbon monoxide, and were to consider Mr. Cannon's testimony, Home Depot would still be entitled to summary judgment.  The facts Ms. King could establish through this inference and testimony might prove her negligence claims, but they do not vitiate Home Depot's defense under the exculpatory provisions of the rental agreement.  As such, Home Depot is entitled to summary judgment irrespective of the Court's resolution of the other motions.  Because Home Depot is entitled to summary judgment on all of Ms. King's claims, these motions are moot.

**ORDERED** that this case is closed.

DATED September 5, 2024.


BY THE COURT:


Philip A. Brimmer
Chief United States District Judge